Filed by _____ D.C.

ELECTRONIC

**APR. 7, 2008**

STEVEN M. LARIMORE
CLERK  U.S.  DIST.  CT.
S.D.  OF  FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO: _____

RICHARD KURTZ,
a New Jersey resident,

### 08-80355-Civ-HURLEY/HOPKINS

      Plaintiff,

v.

GREGORY E. YOUNG, individually,
G.E.YOUNG, P.A., a Florida corporation,
EDWARDS, ANGELL, PALMER,
& DODGE, LLP, a Delaware limited liability
partnership, and RENNER, BURGESS, INC.,
a Florida corporation,
      Defendant(s).
_____/

### COMPLAINT

COMES NOW, the Plaintiff, RICHARD KURTZ, (hereinafter "Plaintiff"), by and through his undersigned counsel, and files this Complaint against the Defendants; GREGORY E. YOUNG, individually, (hereinafter "YOUNG"), G.E. YOUNG, P.A. a Florida corporation, (hereinafter YOUNG, P.A.), EDWARDS, ANGELL, PALMER & DODGE, LLP, a Delaware limited liability partnership (hereinafter EDWARDS & ANGELL), and RENNER, BURGESS, INC., a Florida corporation, (hereinafter "RENNER"), and as grounds thereof, states as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs, interest and attorney's fees, between citizens of different States. This Court has jurisdiction pursuant to 28 U.S.C §1332.

2. Defendant, YOUNG, is an attorney licensed to practice law in the State of Florida, and is a sui juris resident of Palm Beach County, Florida, and is otherwise subject to the jurisdiction of this Court.

ORIGINAL

3.   Defendant, YOUNG, P.A., is a professional association incorporated in Florida and having its principal place of business in Palm Beach County, Florida, and is otherwise subject to the jurisdiction of this Court.

4.   Defendant, EDWARDS & ANGELL, is a Delaware limited liability partnership doing business in Palm Beach County, Florida, and is otherwise subject to the jurisdiction of this Court.

5.   Defendant, RENNER, is a Florida corporation having its principal place of business in Palm Beach County, Florida, and is otherwise subject to the jurisdiction of this Court.

6.   At all material times hereto, Plaintiff was a resident of Alpine, New Jersey, and submits himself to the jurisdiction of this Court.

7.   All actions giving rise to the claims set forth herein occurred in Palm Beach County, Florida, and the properties that are the subject of this action are situated in Palm Beach County, Florida,  giving this court proper venue pursuant to 28 U.S.C. §1391.

<u>GENERAL ALLEGATIONS</u>

8.   Defendant, YOUNG, is the shareholder and president of YOUNG, P.A.

9.   Defendant, YOUNG, is an employee of EDWARDS & ANGELL.

10.  Defendant, YOUNG, P.A. is a partner in the EDWARDS & ANGELL limited liability partnership.

11.  In February of 2006, Plaintiff was in the midst of negotiating a contract for the purchase of a parcel of real estate in the Town of Palm Beach, Florida, consisting of a waterfront single family residence in which Plaintiff was desirous of residing, to wit: 235 Via Vizcaya, Palm Beach, Florida (hereinafter "Lot 1").

12.  Prior to making an offer for Lot 1, Plaintiff, through Plaintiff's agent, delivered an unsigned offer and contract to purchase Lot 1 to YOUNG, who had represented Plaintiff

2

in at least two real estate transactions in the past, for YOUNG's review and consultation.

13. Upon delivery of the unsigned offer for Lot 1 to YOUNG, Plaintiff hired and employed YOUNG to provide Plaintiff competent legal advice and to act with a reasonable degree of care, skill and dispatch in his representation of Plaintiff. As such, YOUNG owed Plaintiff a duty of reasonable care in connection with such legal representation.

14. Plaintiff would not have employed YOUNG but for YOUNG holding himself out as an experienced high-end residential and land use attorney specifically familiar with the Town of Palm Beach.

15. Prior to Plaintiff executing the contract to purchase Lot 1, on or about February 14, 2006, YOUNG received a title commitment from First American Title Insurance Company to issue title insurance on Lot 1.

16. The February 14, 2006 title commitment contained an exception to coverage for any restrictions, dedications, conditions, reservations, easements, and other matters shown on the Plat of Via Vizcaya, as recorded in Plat Book 16, Page(s) 83 of the Public Records for Palm Beach County, Florida.

17. The Plat of Via Vizcaya, as recorded in Plat Book 16, Page(s) 83, clearly shows and delineates a ten foot setback requirement and building line from the south boundary line of Lot 1.

18. The February 14, 2006 title commitment also contained an exception to coverage for an Agreement as set forth in an instrument recorded in Deed Book 528, Page 438.

19. The Agreement recorded in Deed Book 528, Page 438 contains a covenant that no building or portion thereof shall ever be erected within ten (10) feet of the south line of Lot 1.

20. On February 28, 2006, based on the advice and consultation of YOUNG and Plaintiff's reasonable reliance thereon, Plaintiff entered into a binding contract to purchase Lot 1 for $7,150,000.00.

21. On or about March 1, 2006, Plaintiff became aware that the parcel of real property adjacent to, and south of, Lot 1 was for sale, to wit: 12 Via Vizcaya, Palm Beach, Florida (hereinafter "Lot 12").

22. From the first time Plaintiff learned of the possibility of purchasing Lot 12 and due to the limited size and square footage of Lot 1, as well as increasing the water frontage of the entire property to 264 feet, Plaintiff's interest in purchasing Lot 12 was to enable him to build a single residence on both Lot 1 and Lot 12, combined, of such dimensions and size that would not be buildable on only one of the Lots.   To that end, Plaintiff consulted with a professional architectural design firm to design a single residence on the combined lots.

23. Lot 1 and Lot 12 are adjacent to each other and share the common boundary line of the north boundary line of Lot 12 and the South boundary line of Lot 1,  (hereinafter "the boundary line").

24. The residence Plaintiff was planning to build on the two lots would cross, violate and/or "straddle," the common boundary line between the two adjacent lots as established by the recorded Plat for the subdivision in which both lots are located, Via Vizcaya.

25. As he did with Lot 1, prior to making an offer on Lot 12, Plaintiff, through Plaintiff's agent, delivered an unsigned offer and contract to purchase Lot 12 to YOUNG, for YOUNG's review and comment.

26. At all material times, YOUNG was aware that Lot 12 was adjacent to Lot 1.

4

27. Upon delivery of the unsigned offer for Lot 12 to YOUNG, Plaintiff advised YOUNG that his intention, use, and reason for purchasing both adjacent Lots 1 and 12 was to construct a single waterfront residence on both Lot 1 and Lot 12 of such dimensions and size that would not be buildable on only one of the lots. Constructing a single residence on two or more lots is a common practice with the purchase of adjacent parcels in the Town of Palm Beach, especially with significant water frontage, which would be created as a result of combining the two Lots.

28. Upon delivery of the unsigned offer for Lot 12 to YOUNG, Plaintiff advised YOUNG that the single residence he was planning to build on the two lots would cross, violate and/or "straddle," the common boundary line between the two adjacent lots.  In fact, when YOUNG ordered the survey associated with the acquisition of Lot 1 in connection with his representation, he ordered only a survey of the entire newly created parcel combining Lots 1 and 12.

29. Upon delivery of the unsigned offer for Lot 12 to YOUNG, Plaintiff hired and employed YOUNG to provide Plaintiff legal advice specifically regarding the ability of Plaintiff to construct a single residence on both lots and to advise Plaintiff regarding the feasibility of said construction based on the applicable zoning, building, and setback requirements and restrictions on Lot 1 and Lot 12.

30.  Plaintiff advised YOUNG that the home on Lot 12 could be acquired "as is" inasmuch as Plaintiff planned to demolish the existing home and build a new single waterfront residence on both Lots 1 and 12.

31. YOUNG knew, or should have known, that the single waterfront residence Plaintiff intended to construct on the two Lots would violate the setback requirements of the boundary line between the Lots as set forth in the Plat of Via Vizcaya.

5

32. Prior to the Plaintiff executing the contract to purchase Lot 12, on or about March 9, 2006, YOUNG received a title commitment from First American Title Insurance Company to issue title insurance on Lot 12.

33. The March 9, 2006 title commitment for Lot 12 contained an exception from coverage for any restrictions, dedications, conditions, reservations, easements, and other matters shown on the Plat of Via Vizcaya, as recorded in Plat Book 16, Page(s) 83 of the Official Records for Palm Beach County, Florida.

34. The Plat of Via Vizcaya, as recorded in Plat Book 16, Page(s) 83, clearly shows and delineates a ten foot setback requirement and building line from both the north and south boundary line between Lots 1 and 12.

35. On March 16, 2006, based on the advice and consultation of YOUNG and Plaintiff's reasonable reliance thereon that Plaintiff could construct the single waterfront residence Plaintiff planned on both lots, Plaintiff entered into a binding contract to purchase Lot 12 for $7,000,000.00.

36. YOUNG advised and represented Plaintiff throughout both transactions through closing.

37. YOUNG failed to advise Plaintiff of the existence, content, or effect of the setback requirements contained in the Plat of Via Vizcaya and any recorded Agreements affecting Lot 1 and Lot 12.

38. On May 1, 2006, Plaintiff closed on the purchase of Lot 1 for $7,150,000.00.

39. On May 1, 2006, Plaintiff closed on the purchase of Lot 12 for $7,000,000.00.

40. But for YOUNG's advice to Plaintiff that the Lots were suitable for Plaintiff's intent, use, and reason for purchasing the two lots on which to build a single residence, Plaintiff would not have purchased Lot 12.

41. In or about December of 2006, and in reasonable reliance of YOUNG's advice that the two lots were suitable for constructing a single residence, Plaintiff caused to be demolished the existing homes on each of the two lots.

42. In or about October of 2007, Plaintiff was made aware of two additional lots that are adjacent to one another in the same Via Vizcaya subdivision and adjacent to Lot 1 to the east. The lots are also subject to the Plat of Via Vizcaya (hereinafter "Lots 2 and 3").

43. Prior to making an offer for Lots 2 and 3, Plaintiff, or Plaintiff's agent, delivered an unsigned offer and contract to purchase Lots 2 and 3 to YOUNG, for YOUNG's review and consultation.

44. In or about October of 2007, Plaintiff, or Plaintiff's agent, consulted YOUNG regarding the ability to construct a single residence on the adjacent Lots 2 and 3.

45. YOUNG advised Plaintiff that Plaintiff may not be able to build a single residence on Lots 2 and 3 due to the Via Vizcaya Plat setback requirements of the common boundary line between Lots 2 and 3.

46. The setback requirements for the common boundary line between Lots 2 and 3 are the same or substantially similar to the setback requirements of the common boundary line between Lot 1 and Lot 12.

47. When the issue regarding setbacks first arose in October 2007, Plaintiff's real estate agent had the opportunity to discuss the issue with YOUNG and inquired as to whether Plaintiff had a similar problem regarding his ability to construct a single residence across the boundary of Lots 1 and 12; at which point, YOUNG unequivocally responded in the negative, i.e., that Plaintiff did not have a problem in connection with his plans to construct a single residence across the lot lines between Lots 1 and 12.

7

48. In or about October of 2007, consistent with his discussion with Plaintiff's real estate agent, YOUNG prepared an "Addendum to Contract" to the proposed Contract and Sale and Purchase for the purchase of Lots 2 and 3 which proposed to make the Contract conditional on Plaintiff obtaining approval from the other landowners in the Via Vizcaya subdivision for Plaintiff to violate or otherwise encroach on the Plat setback requirements.

49. Shortly thereafter and contrary to his prior position, YOUNG for the first time advised Plaintiff that building a single waterfront residence on Lots 1 and 12 would also violate the Plat setback requirements of Via Vizcaya.

50. The Plat setback requirement is not regulatory or codified, but a private restriction that runs with the land and the only means of building within the ten foot setback is to obtain approval of all other lot owners in the subdivision.

51. Plaintiff has attempted to obtain such consent, but such other lot owners have refused to consent to the violation of the Plat setback requirements for Via Vizcaya.

52. All conditions precedent to this action have been met or have been waived by the defendants in connection with all claims asserted herein.

### COUNT I
### PROFESSIONAL NEGLIGENCE—GREGORY E. YOUNG

53. Plaintiff realleges and reaffirms Paragraphs 1 through 52 as though fully set forth herein again and at length.

54. YOUNG holds himself out to be an attorney experienced real estate and land use attorney, with significant experience with "high-end" residential and land use matters on a local level, including in the Town of Palm Beach.

55. YOUNG was under a duty to act with a reasonable degree of care, skill, and dispatch in his representation of Plaintiff.

8

56. YOUNG was under a duty to investigate the title to real estate, to make a thorough examination of the records and to report all facts relating to the title, and to give an opinion on the marketability of the title to the property.

57. YOUNG neglected his duty to act with a reasonable degree of care, skill and dispatch in his representation of Plaintiff.

58. YOUNG's failure to read and review the Plat of Via Vizcaya and the recorded Agreements and advise Plaintiff of their contents and effect on Lot 1 and Lot 12, was a breach of YOUNG's duty to act with a reasonable degree of care, skill, and dispatch in his representation of Plaintiff.

59. YOUNG breached his duty of care by his failure to read and review the Plat of Via Vizcaya and the recorded Agreements, and failure to properly advise Plaintiff of the possible negative consequences of the Plat setback requirements to Plaintiff's plan to build a single residence on Lot 1 and Lot 12 that would violate the Plat setback requirements.

60. YOUNG's breach of his duty of care resulted in, and is the direct and proximate cause of loss and damages to Plaintiff, and Plaintiff continues to suffer damages including, but not limited, (1) loss in the value of both lots due to the demolition of the existing homes on both lots leaving two vacant non-conforming non-buildable lots with less then the required minimum 20,000 square feet lot area to construct a single residence as required by Sec. 134-843, Code of Ordinances, Town of Palm Beach, Florida; (2) the cost associated with the construction of a replacement home on each parcel that would not have otherwise been demolished, but for the representations of YOUNG; (3) the additional professional architecture and engineering fees associated with addressing the setback requirements; attorney's fees associated with attempting to obtain consents from

other lot owners within Via Vizcaya; and (4) the additional carrying costs associated with the delay in reconstructing homes on each parcel, if permitted at all.

WHEREFORE, Plaintiff respectfully requests that this Court award a judgment in his favor and against YOUNG individually, award Plaintiff damages that resulted as a direct and proximate result of YOUNG's negligence, costs of filing suit, pre-judgment interest, and for any further relief this Court deems just and appropriate.

## COUNT II
## PROFESSIONAL NEGLIGENCE—G.E. YOUNG, P.A.

61. Plaintiff realleges and reaffirms Paragraphs 1 through 52 as though fully set forth herein again and at length.

62. YOUNG is the shareholder and owner of YOUNG, P.A.

63. YOUNG, P.A. is jointly, severally, and vicariously liable for the actions or omissions of YOUNG.

64. YOUNG, P.A. holds itself out to be an experienced real estate and land use attorney association, with significant experience with "high-end" residential and land use matters on a local level, including in the Town of Palm Beach.

65. Plaintiff employed YOUNG, P.A. to provide competent legal advice in connection with the acquisition of Lot 12, and as such, YOUNG, P.A. was under a duty to act with a reasonable degree of care, skill, and dispatch in his representation of Plaintiff.

66. YOUNG, P.A. was under a duty to investigate the title to real estate, to make a thorough examination of the records and to report all facts relating to the title, and to give an opinion on the marketability of the title to the property.

67. YOUNG, P.A. neglected his duty to act with a reasonable degree of care, skill and dispatch in his representation of Plaintiff.

10

68. YOUNG, P.A.'s failure to read and review the Plat of Via Vizcaya and the recorded Agreements and advise Plaintiff of their contents and affect on Lots 1 and 12, was a breach of YOUNG, P.A.'s duty to act with a reasonable degree of care, skill, and dispatch in his representation of Plaintiff.

69. YOUNG, P.A. breached his duty of care by his failure to read and review the Plat of Via Vizcaya and the recorded Agreements, and failure to properly advise Plaintiff of the possible negative consequences of the Plat setback requirements in connection with Plaintiff's plan to build a single residence on Lots 1 and 12 which would violate the Plat setback requirements.

70. YOUNG's breach of his duty of care resulted in, and is the direct and proximate cause of loss and damages to Plaintiff, and Plaintiff continues to suffer damages including, but not limited, (1) loss in the value of both lots due to the demolition of the existing homes on both lots leaving two vacant non-conforming non-buildable lots with less then the required minimum 20,000 square feet lot area to construct a single residence as required by Sec. 134-843, Code of Ordinances, Town of Palm Beach, Florida; (2) the cost associated with the construction of a replacement home on each parcel that would not have otherwise been demolished, but for the representations of YOUNG; (3) the additional professional architecture and engineering fees associated with addressing the setback requirements; attorney's fees associated with attempting to obtain consents from other lot owners within Via Vizcaya;, and (4) the additional carrying costs associated with the delay in reconstructing homes on each parcel, if permitted at all.

WHEREFORE, Plaintiff respectfully requests that this Court award a judgment in his favor and against YOUNG, P.A., award Plaintiff damages that resulted as a direct and proximate result of YOUNG, P.A.'s negligence, costs of filing suit, pre-judgment interest, and for any

11

further relief this Court deems just and appropriate.

**COUNT III**
**PROFESSIONAL NEGLIGENCE—EDWARDS ANGELL PALMER & DODGE, LLP**

71. Plaintiff realleges and reaffirms Paragraphs 1 through 12 as though fully set forth herein again and at length.

72. Prior to making an offer for Lot 1, Plaintiff, through Plaintiff's agent, delivered an unsigned offer and contract to purchase Lot 1 to EDWARDS & ANGELL, who had represented Plaintiff in at least two real estate transactions in the past, for EDWARDS & ANGELL's review and consultation.

73. Upon delivery of the unsigned offer for Lot 1 to EDWARDS & ANGELL, Plaintiff hired and employed EDWARDS & ANGELL to provide Plaintiff competent legal advice and to act with a reasonable degree of care, skill and dispatch in his representation of Plaintiff. As such, EDWARDS & ANGELL owed Plaintiff a duty of reasonable care in connection with such representation. (While Plaintiff executed a retainer agreement with EDWARDS 7 ANGELL in connection with such services, upon diligent inquiry, Plaintiff has been unable to locate such agreement).

74. Plaintiff would not have employed EDWARDS & ANGELL but for EDWARDS & ANGELL holding itself out as an experienced "high-end" residential and land use law firm specifically familiar with the Town of Palm Beach.

75. Prior to Plaintiff executing the contract to purchase Lot 1, on or about February 14, 2006, EDWARDS & ANGELL received a title commitment from First American Title Insurance Company to issue title insurance on Lot 1.

76. The February 14, 2006 title commitment contained an exception to coverage for any restrictions, dedications, conditions, reservations, easements, and other matters shown

12

on the Plat of Via Vizcaya, as recorded in Plat Book 16, Page(s) 83 of the Official Records of Palm Beach County.

77. The Plat of Via Vizcaya, as recorded in Plat Book 16, Page(s) 83, clearly shows and delineates a ten foot setback requirement and building line from the south boundary line of Lot 1.

78. The February 14, 2006 title commitment also contained an exception to coverage for an Agreement as set forth in an instrument recorded in Deed Book 528, Page 438.

79. The Agreement recorded in Deed Book 528, Page 438 contains a covenant that no building or portion thereof shall ever be erected within ten (10) feet of the south line of Lot 1.

80. On February 28, 2006, based on the advice of EDWARDS & ANGELL and Plaintiff's reasonable reliance thereon, Plaintiff entered into a binding contract to purchase Lot 1 for $7,150,000.00.

81. On or about March 1, 2006, Plaintiff became aware that the parcel of real property adjacent to, and south of, Lot 1 was for sale, to wit: 12 Via Vizcaya, Palm Beach, Florida (hereinafter "Lot 12").

82. From the first time Plaintiff learned of the possibility of purchasing Lot 12 and due to the limited size and square footage of Lot 1, Plaintiff's interest in purchasing Lot 12 was to enable him to build a single waterfront residence on both Lot 1 and Lot 12, combined, of such dimensions and size that would not be buildable on only one of the Lots.   To that end, Plaintiff consulted with a professional architectural design firm to design a single residence on the combined lots, taking advantage of the 264 feet of water frontage.

13

83. Lot 1 and Lot 12 are adjacent to each another and share the common boundary line of the north boundary line of Lot 12 and the South boundary line of Lot 1, (hereinafter "the boundary line").

84. The residence Plaintiff was planning to build on the two Lots would cross, violate and/or "straddle," the common boundary line between the two adjacent Lots as established by the recorded Plat for the subdivision in which both lots are located, Via Vizcaya.

85. As he did with Lot 1, prior to making an offer on Lot 12, Plaintiff, through Plaintiff's agent, delivered an unsigned offer and contract to purchase Lot 12 to EDWARDS & ANGELL, for EDWARDS & ANGELL's review and comment.

86. At all material times, EDWARDS & ANGELL was aware that Lot 12 was adjacent to Lot 1.

87. Upon delivery of the unsigned offer for Lot 12 to EDWARDS & ANGELL, Plaintiff advised EDWARDS & ANGEL that his intention, use, and reason for purchasing both adjacent Lots 1 and 12 was to construct a single residence on both Lot 1 and Lot 12 of such dimensions and size that would not be buildable on only one of the lots. Constructing a single residence on two or more lots is a common practice with the purchase of adjacent parcels in the Town of Palm Beach.

88. Upon delivery of the unsigned offer for Lot 12 to EDWARDS & ANGELL, Plaintiff advised EDWARDS & ANGELL that the single residence he was planning to build on the two lots would cross, violate and/or "straddle," the common boundary line between the two adjacent lots.  In fact, when EDWARDS & ANGELL ordered the survey associated with the acquisition of Lot 1 in connection with his representation, it ordered a survey of the entire newly created parcel combining Lots 1 and 12.

14

89. Upon delivery of the unsigned offer for Lot 12 to EDWARDS & ANGELL, Plaintiff hired and employed EDWARDS & ANGELL to provide Plaintiff legal advice specifically regarding the Plaintiff's ability to construct a the single residence on both Lots and to advise Plaintiff regarding the feasibility of such construction based on the applicable zoning, building, and setback requirements and restrictions on Lot 1 and Lot 12.

90. Plaintiff advised EDWARDS & ANGELL that the home on Lot 12 could be acquired "as is" inasmuch as Plaintiff was going to demolish the existing home and build a new single residence on both lots 1 and 12.

91. EDWARDS & ANGELL knew, or should have known, that the single residence Plaintiff intended to construct on the two lots would violate the setback requirements of the boundary line between the Lots as set forth in the Plat of Via Vizcaya.

92. Prior to Plaintiff executing the contract to purchase Lot 12, on or about March 9, 2006, EDWARDS & ANGELL received a title commitment from First American Title Insurance Company to issue title insurance on Lot 12.

93. The March 9, 2006 title commitment for Lot 12 contained an exception from coverage for any restrictions, dedications, conditions, reservations, easements, and other matters shown on the Plat of Via Vizcaya, as recorded in Plat Book 16, Page(s) 83 of the Official Records of Palm Beach County, Florida.

94. The Plat of Via Vizcaya, as recorded in Plat Book 16, Page(s) 83, clearly shows and delineates a ten foot setback requirement and building line from both the north and south boundary line between Lots 1 and 12.

95. On March 16, 2006, based on the advice and consultation of EDWARDS & ANGELL and Plaintiff's reasonable reliance thereon that Plaintiff could construct the single

15

residence Plaintiff planned on both lots, Plaintiff entered into a binding contract to purchase Lot 12 for $7,000,000.00.

96. EDWARDS & ANGELL advised and represented Plaintiff throughout both transactions through closing.

97. EDWARDS & ANGELL failed to advise Plaintiff of the existence, content, or effect of the setback requirements contained in the Plat of Via Vizcaya and any recorded Agreements affecting Lot 1 and Lot 12.

98. On May 1, 2006, Plaintiff closed on the purchase of Lot 1 for $7,150,000.00.

99. On May 1, 2006, Plaintiff closed on the purchase of Lot 12 for $7,000,000.00.

100. But for EDWARDS & ANGELL's advice to Plaintiff that the Lots were suitable for Plaintiff's intent, use, and reason for purchasing the two lots on which to build a single residence, Plaintiff would not have purchased Lot 12.

101. In or about December of 2006, and in reasonable reliance of EDWARDS & ANGELL's advice that the two Lots were suitable for constructing a single residence, Plaintiff caused to be demolished the existing homes on each of the two lots.

102. In or about October of 2007, Plaintiff was made aware of two additional lots that are adjacent to one another in the same Via Vizcaya subdivision and adjacent to Lot 1 to the east. The Lots are also subject to the Plat of Via Vizcaya (hereinafter "Lots 2 and 3").

103. Prior to making an offer for Lots 2 and 3, Plaintiff, or Plaintiff's agent, delivered an unsigned offer and contract to purchase Lots 2 and 3 to EDWARDS & ANGELL, for EDWARDS & ANGELL's review and consultation.

104. In or about October of 2007, Plaintiff's agent, consulted EDWARDS & ANGELL regarding the buildability of a single residence on the adjacent Lots 2 and 3.

16

105. EDWARDS & ANGELL advised Plaintiff that Plaintiff may not be able to build a single residence on Lots 2 and 3 due to the Via Vizcaya Plat setback requirements of the common boundary line between Lots 2 and 3.

106. The setback requirements for the common boundary line between Lots 2 and 3 are the same or similar to the setback requirements of the common boundary line between Lot 1 and Lot 12.

107 When the issue regarding setbacks first arose in October 2007, Plaintiff's real estate agent had the opportunity to discuss the setback issue with a representative of EDWARDS & ANGELL and inquired as to whether Plaintiff had a similar problem regarding building across the boundary of Lots 1 and 12. At which point, EDWARDS & ANGELL's duly authorized representative unequivocally responded in the negative, i.e., that Plaintiff did not have a problem in connection with his plans to construct a single residence across the lot lines between Lots 1 and 12.

108. In or about October of 2007, consistent with his discussion with Plaintiff's real estate agent, EDWARDS & ANGELL's duly authorized representative prepared an "Addendum to Contract" to the proposed Contract and Sale and Purchase for the purchase of Lots 2 and 3 which proposed to make the Contract conditional on Plaintiff obtaining approval from the other landowners in the Via Vizcaya subdivision for Plaintiff to violate or otherwise encroach on the Plat setback requirements.

109. Shortly thereafter, and contrary to its prior position, EDWARDS & ANGELL advised Plaintiff that building a single residence on Lot 1 and Lot 12 that Plaintiff had already purchased would also violate the Plat setback requirements of Via Vizcaya.

17

110. The Plat setback requirement is not regulatory or codified, but a private restriction that runs with the land and the only means of building within the ten foot setback is to obtain approval of all 12 other lot owners in the subdivision.

111. Plaintiff has attempted to obtain such consent, but such other lot owners have refused to consent to the violation of the Plat setback requirements for Via Vizcaya.

112. EDWARDS & ANGELL was under a duty to act with a reasonable degree of care, skill, and dispatch in his representation of Plaintiff.

113. EDWARDS & ANGELL was under a duty to investigate the title to real estate, to make a thorough examination of the records and to report all facts relating to the title, and to give an opinion on the marketability of the title to the property.

114. EDWARDS & ANGELL neglected its duty to act with a reasonable degree of care, skill and dispatch in its representation of Plaintiff.

115. EDWARDS & ANGELL's failure to read and review the Plat of Via Vizcaya and the recorded Agreements and advise Plaintiff of their contents and affect on Lot 1 and Lot 12, was a breach of EDWARDS & ANGELL's duty to act with a reasonable degree of care, skill, and dispatch in his representation of Plaintiff.

116. EDWARDS & ANGELL breached its duty of care by its failure to read and review the Plat of Via Vizcaya and the recorded Agreements, and failure to properly advise Plaintiff of the negative possible consequences of the Plat setback requirements to Plaintiff's plan to build a single residence on Lot 1 and Lot 12 that would violate the Plat setback requirements.

117. EDWARDS & ANGELL's breach of its duty of care resulted in, and is the direct and proximate cause of loss and damages to Plaintiff, and Plaintiff continues to suffer damages including, but not limited, (1) loss in the value of both lots due to the

18

demolition of the existing homes on both lots leaving two vacant non-conforming non-buildable lots with less then the required minimum 20,000 square feet lot area to construct a single residence as required by Sec. 134-843, Code of Ordinances, Town of Palm Beach, Florida; (2) the cost associated with the construction of a replacement home on each parcel that would not have otherwise been demolished, but for the representations of EDWARDS & ANGELL; (3) the additional professional architecture and engineering fees associated with addressing the setback requirements; attorney's fees associated with attempting to obtain consents from other lot owners within Via Vizcaya; and (4) the additional carrying costs associated with the delay in reconstructing homes on each parcel, if permitted at all.

118. All conditions precedent have been met or have been waived by the defendant in connection with all claims asserted herein.

WHEREFORE, Plaintiff respectfully requests that this Court award a judgment in his favor and against EDWARDS & ANGELL, award Plaintiff damages that resulted as a direct and proximate result of EDWARDS & ANGELL's negligence, costs of filing suit, pre-judgment interest. and for any further relief this Court deems just and appropriate.

## COUNT IV
## VICARIOUS LIABILITY—EDWARDS & ANGELL

119. Plaintiff realleges and reaffirms Paragraphs 1 through 52 as though fully set forth herein again and at length.

120. At all material times hereto, Defendant, YOUNG, was an employee or agent of EDWARDS & ANGELL, and all acts and omissions set forth in the above-referenced paragraphs were engaged in within the course and scope of YOUNG's employment or apparent authority as agent for EDWARDS & ANGELL.

19

121. YOUNG breached his duty of care by failure to read and review the Plat of Via Vizcaya and the recorded agreements, and his failure to properly advise Plaintiff of the possible negative consequences of the Plat setback requirements in connection with Plaintiff's plan to build a single residence on Lots 1 and 12 which would violate the Plat setback requirements.

122. YOUNG's breach of his duty of care resulted in, and is the direct and proximate cause of loss and damages to Plaintiff, and Plaintiff continues to suffer damages including, but not limited, (1) loss in the value of both lots due to the demolition of the existing homes on both lots leaving two vacant non-conforming non-buildable lots with less then the required minimum 20,000 square feet lot area to construct a single residence as required by Sec. 134-843, Code of Ordinances, Town of Palm Beach, Florida; (2) the cost associated with the construction of a replacement home on each parcel that would not have otherwise been demolished, but for the representations of YOUNG; (3) the additional professional architecture and engineering fees associated with addressing the setback requirements; attorney's fees associated with attempting to obtain consents from other lot owners within Via Vizcaya; and (4) the additional carrying costs associated with the delay in reconstructing homes on each parcel, if permitted at all.

WHEREFORE, Plaintiff respectfully requests that this Court award a judgment in his favor and against RENNER, award Plaintiff damages that resulted as a direct and proximate result of RENNER's negligence, costs of filing suit, pre-judgment interest, and for any further relief this Court deems just and appropriate.

<u>**COUNT V**</u>
<u>**PROFESSIONAL NEGLIGENCE—RENNER**</u>

123. Plaintiff realleges and reaffirms Paragraphs 1 through 12 as though fully set forth herein again and at length.

20

124. RENNER is a licensed land surveyor in the State of Florida and County of Palm Beach.

125. RENNER holds itself out as a professional surveyor in Palm Beach County, Florida.

126. RENNER was employed by Plaintiff to complete surveys of Lots 1 and 12.

127. RENNER knew, or should have known, that Plaintiff intended to build a single residence on the two lots that would necessarily violate any Plat setback lines or requirements of the boundary line between the two lots.

128. RENNER had a duty to act with reasonable care in preparing the surveys for Plaintiff.

129. RENNER prepared a survey dated April 10, 2006, Job No. 3-06-129, of Lot 12 only.

130. RENNER prepared a combined survey dated April 12, 2006, Job No. 4-044, of both Lots 1 and 12.

131. RENNER failed to depict the Plat setback lines, building lines or requirements on the survey of Lot 12, or on the combined survey of both Lots 1 and 12.

132. The setback requirements and building liens of the lots are clearly visible on the Plat of Via Vizcaya, and the Plat of Via Vizcaya is duly recorded and available for public inspection as recorded in Plat Book 16, Page 83, of the Public Records of Palm Beach County, Florida (hereinafter "the Plat").

133. The setback requirements for Lot 1 are also recorded as a deed Agreement in Book 528 Page 438, in the Public Records of Palm Beach County, Florida.

134. The setback requirements for Lot 12 are also recorded as a deed Agreement in Book 617 Page 229, in the Public Records of Palm Beach County, Florida.

135. RENNER's failure to review and accurately depict the Plat setback lines, building lines and requirement on the two surveys was a violation of its duty to use reasonable care and skill in preparing the surveys.

136. RENNER's breach of its duty of care resulted in, and is the direct and proximate cause of loss and damages to Plaintiff, and Plaintiff continues to suffer damages including, but not limited, (1) loss in the value of both lots due to the demolition of the existing homes on both lots leaving two vacant non-conforming non-buildable lots with less then the required minimum 20,000 square feet lot area to construct a single residence as required by Sec. 134-843, Code of Ordinances, Town of Palm Beach, Florida; (2) the cost associated with the construction of a replacement home on each parcel that would not have otherwise been demolished, but for the representations of RENNER; (3) the additional professional architecture and engineering fees associated with addressing the setback requirements; attorney's fees associated with attempting to obtain consents from other lot owners within Via Vizcaya; and (4) the additional carrying costs associated with the delay in reconstructing homes on each parcel, if permitted at all.

WHEREFORE, Plaintiff respectfully requests that this Court award a judgment in his favor and against RENNER, award Plaintiff damages that resulted as a direct and proximate result of RENNER's negligence, costs of filing suit, pre-judgment interest, and for any further relief this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

**Dated:** April 4 2008

                                        **GRANER & HEIMOVICS, P.A.**

                                        By: _____
                                             Thomas U. Graner, Esq.
                                             Florida Bar No.: 905577 / 052159
                                             399 W. Palmetto Park Rd., Ste. 100
                                             Boca Raton, FL 33432
                                             (561) 750-2445 Telephone
                                             (561) 750-2446 Facsimile

JS 44 (Rev. 12/96)

CIVIL COVER SHEET

D.C.

ELECTRONIC

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed**

**APR. 7, 2008**

| I. (a) PLAINTIFFS | DEFENDANTS | |
|---|---|---|
| Richard Kurtz, a New Jersey Resident | GREGORY E. YOUNG, individually, YOUNG, P.A., a Florida corporation, | STEVEN M. LARIMORE CLERK U.S. DIST. CT. S.D. OF FLA.- MIAMI |

**(b)** County of Residence of First Listed Plaintiff **Bergen**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Palm Beach**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Thomas U. Graner, Esq.
Graner & Heimovics, P.A.
399 W. Palmetto Park Road, Suite 100
Boca Raton, FL 33432

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**08CV80355 DTKH / JMN**

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed- (see VI below) ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO b) Related Cases ☐ YES ☑ NO

JUDGE _____ DOCKET NUMBER _____

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC Section 1332 Diversity of Jurisdiction and case is based on Professional Negligence.

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 4/4/2008

FOR OFFICE USE ONLY

AMOUNT 350.00 RECEIPT # 723998