UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80355-CIV-HURLEY/HOPKINS

RICHARD KURTZ,

    Plaintiff,

vs.

GREGORY E. YOUNG, et al.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon defendants' motion for summary judgment [DE # 119]. For the reasons expressed below, the court will grant the motion in part and deny it in part.

### BACKGROUND

This is a legal malpractice action arising out of plaintiff Richard Kurtz's 2006 purchase of two adjacent parcels of land in Palm Beach, Florida. The defendants, Gregory E. Young, G.E. Young, P.A., and Edwards Angell Palmer & Dodge, LLP, advised Kurtz in connection with the subject transactions, as further described below. The facts described below are viewed in the light most favorable to plaintiff as the non-movant. *See Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009).

In February 2006, Kurtz agreed to purchase a parcel of land at 235 Via Vizcaya, Palm Beach, Florida ("Lot 1") for $7.15 million. The day after entering into the contract, Kurtz learned that the parcel adjacent to Lot 1 was also for sale ("Lot 12"). *See* Am. Compl. ¶ 19-20. Kurtz was interested in purchasing Lot 12 so that he could build a single residence stretching across the boundary line separating the two lots. He informed defendant Gregory Young, a real estate attorney and partner

of defendant Edwards Angell Palmer & Dodge LLP ("EAPD"), of his intent. *See id.* ¶ 21, 26. Kurtz then executed a contract for the purchase of Lot 12 for $7 million, and delivered it to Young for review. The purchase contract contained a 10-day inspection period within which Kurtz was entitled to rescind the contract and reclaim his deposit. According to the complaint, the contract was provided to Young "within no more than two business days of its execution." *See id.* ¶ 24. On April 14, 2006, Young received a title commitment from First American Title Insurance Company containing an exception from coverage for any restrictions shown on the Plat of Via Vizcaya, as recorded in the Official Records for Palm Beach County, Florida. *See id.* ¶ 29-30.

Kurtz was unaware that the Plat of Via Vizcaya contains a setback requirement prohibiting any building within ten feet of the boundary lines of both Lot 1 and Lot 12, including the common boundary between the two lots. Thus the Plat creates a twenty-foot-wide zone in the middle of the combined parcel in which building is not permitted. Young did not alert Kurtz to this fact, and Kurtz closed on the purchase of both lots on May 1, 2006. *See id.* ¶ 33-35. In December 2006 Kurtz, proceeding with his plans to build a single residence straddling the boundary between Lot and Lot 12, caused the existing houses on each lot to be demolished. *See id.* ¶ 37.

Kurtz became aware of the problem in October 2007, when he considered buying Lot 2 and Lot 3, another pair of adjacent parcels in the same Via Vizcaya subdivision. Before agreeing to the purchase, he consulted Young regarding the possibility of constructing another single residence across Lot 2 and Lot 3. Young advised Kurtz that this single residence might be prohibited by the Via Vizcaya plat restrictions. Kurtz inquired as to whether there might be a similar problem with Lots 1 and 12, purchased over one year before. Young responded that there was not. *See id.* ¶ 38-43. Young later retracted this advice and advised Kurtz that a single residence across Lots 1 and 12

would in fact violate Via Vizcaya's plat restrictions. *See id.* ¶ 45.

Kurtz filed this suit on April 7, 2008. The amended complaint asserts claims against Young, G. E. Young, P.A. and EAPD for negligence, gross negligence and breach of fiduciary duty.[1] The instant motion for summary judgment, directed to the amended complaint, was filed by defendants on April 17, 2009.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events giving rise to the claim occurred in the Southern District of Florida.

## DISCUSSION

### A.     *Standard on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to

---

[1] The amended complaint also asserts a claim for negligence against Renner Burgess, Inc., the land surveyor employed by Kurtz to survey Lots 1 and 12. This claim has since been settled through mediation. *See* DE # 104.

establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

  **B.**  ***Motion for Summary Judgment***

    *1.*  *Damages*

An action for legal malpractice consists of three elements: (1) employment of the attorney; (2) the attorney's neglect of a reasonable duty; and (3) that the attorney's negligence was the proximate cause of loss to the client. *See Law Office of David J. Stern, P.A. v. Security Nat'l Servicing Corp.*, 969 So.2d 962, 966 (Fla. 2007); *Cocco v. Pritcher*, 1 So.3d 1246, 1248 (Fla. 4th

4

DCA 2009); *Technical Packaging, Inc. v. Hanchett*, 992 So.2d 309, 311 (Fla. 2d DCA 2008); *Coral Gables Distribution, Inc. v. Milich*, 992 So.2d 302, 303 (Fla. 3d DCA 2008).  Defendants argue that there is no genuine issue of material fact as to whether Kurtz suffered a loss from Young's alleged negligence.

Kurtz alleges that had Young advised him of the Via Vizcaya plat restrictions, he would not have proceeded to close on the purchase of Lot 12.  *See* Am. Compl. ¶ 36.  He claims he would have either rescinded the contract within the ten-day inspection period or, had he learned of the restrictions after expiration of the inspection period, he would have breached the purchase contract and forfeited his deposit.  Defendants argue that there is no evidence to support this assertion.

It is undisputed that Kurtz bought Lot 12, the parcel adjacent to Lot 1, in order to build a single residence across both lots.  *See* Kurtz Dep. at 52:13; 53:20-23.  Kurtz also submitted an affidavit averring that he informed Young of this intent before delivering the Lot 12 purchase contract to Young for his review.  *See* Kurtz 1/15/09 Aff. ¶ 2.  The logical inference that follows, which the court must draw in favor of Kurtz as the non-movant, *see, e.g.*, *Allmond v. Akal Security, Inc.*, 558 F.3d 1312, 1316 (11th Cir. 2009), is that Kurtz would not have purchased the second lot had he known the impossibility of realizing his goal.

Moreover, Kurtz testified at his deposition that he relied on his belief that he could build a single home across both lots in going through with the purchase of Lot 12.  *See* Kurtz Dep. at 91:13-17; 96:5-7.  He similarly stated in his affidavit that but for that belief, he would not have closed on the purchase of Lot 12.  *See* Kurtz 1/15/09 Aff. ¶ 4.  Defendants nevertheless argue that this testimony is merely "speculative," and should be disregarded as insufficient to create a factual issue precluding summary judgment.  The court is not permitted to make a credibility judgment in the

5

case's current posture. *See Velten v. Regis B. Lippert, Intercat, Inc.*, 985 F.2d 1515, 1523 (11th Cir. 1993). A reasonable juror would be entitled to credit Kurtz's testimony (as well as infer from the circumstances) that he would not have closed on the purchase of the two properties had he known earlier about the plat restrictions. On the other hand, a finder of fact might decide to view Kurtz's testimony with more caution because he is a party to the action and his testimony tends to help his case. It is simply a question of fact to be resolved at trial, rather than on summary judgment.

Defendants argue that Kurtz's testimony on this point is inadmissible evidence and should therefore be ignored in the determination of their motion for summary judgment. At the summary judgment stage, the court may consider only evidence that either would be admissible at trial, or is capable of being reduced to an admissible form. *See Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005); *Macuba v. Deboer*, 193 F.3d 1316, 1324-25 (11th Cir. 1999). However, in arguing that the statement is inadmissible, defendants rely exclusively on authority from the Florida state courts, primarily *Drackett Products Co. v. Blue*, 152 So.2d 463, 465 (Fla. 1963). In *Blue*, a negligent-warning case, the Florida Supreme Court held inadmissible the statement of a witness that she would not have kept the product on a shelf accessible to her child had she known that the product (a drain-clog remover) would explode if mixed with water. The court said: "The law seems well established that testimony consisting of guesses, conjecture or speculation . . . are clearly inadmissible in the trial of causes in the courts of this country." 152 So.2d at 465.

Defendants' argument is misplaced because, in federal court, the Federal Rules of Evidence govern the admissibility of evidence at the summary judgment stage just as they do at trial. *Cf. Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 428 (7th Cir. 2000); *Pyles v. Johnson*, 136 F.3d 986, 990 n.3 (5th Cir. 1998); *Sage Realty Corp. v. Ins. Co. of North America*, 34 F.3d 124, 128 (2d

6

Cir. 1994). This is so even in a diversity case such as the one at bar, in which state law governs the underlying substantive claims. *See* Fed. R. Evid. 1101(b); *Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 880 (10th Cir. 2006) ("The admissibility of evidence in diversity cases is generally governed by federal law."); *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 245 (1st Cir. 1985). The citations to Florida law are therefore inapt, and defendants have not pointed to anything in the Federal Rules or the case law interpreting them to suggest that Kurtz's testimony – which appears to be relevant and competent, whatever its ultimate persuasiveness or value to a finder of fact – should be excluded. And, in any event, Florida courts have receded from this element of *Blue* in more recent cases. *See, e.g. Jones v. State*, 908 So.2d 615, 621-22 (Fla. 4th DCA 2005) (permitting a witness in a criminal case to testify as to his understanding of what the defendant meant when he asked the witness to "make sure [a witness in a previous case] never made it to the court room"); *Munoz ex rel Munoz v. South Miami Hosp., Inc.*, 764 So.2d 854, 856 (Fla. 3d DCA 2000) ("[C]ontrary to our initial view, we do not believe that even speculative statements of this kind are inadmissible . . . .").

Assuming that Kurtz in fact closed on the purchase of Lot 12 because of Young's failure to inform Kurtz of the plat restrictions, and that this failure constituted a neglect of Young's reasonable duty of care as an attorney, Kurtz's damages are difficult to calculate with precision. In a transactional malpractice action, the measure of damages is based on a comparison between the status quo and the position the client would have occupied had he been properly advised. *Cf. Waton v. Feder*, 927 So.2d 1086 (Fla. 4th DCA 2006); *Conley v. Shutts & Bowen, P.A.*, 616 So.2d 523, 524 (Fla. 3d DCA 1993).

In this case, if Kurtz purchased Lot 12 only because he did not know of the plat restrictions, Kurtz has suffered damages in the amount of the difference between its current market value and the

purchase price of $7 million. On the other hand, if the market value currently exceeds $7 million, it seems clear that the amount of the excess must count as a setoff against any other items of damage Kurtz sufficiently proves. Kurtz argues that the current market value of Lot 12 is irrelevant, and that his damages are fixed at the difference between the purchase price and the market value at the time of the purchase.[2] This appears inconsistent with the general principle that a plaintiff in a successful legal malpractice action is entitled to the amount which the plaintiff would have received but for the attorney's negligence. *See Anderson Columbia v. Brewer*, 994 So.2d 419, 422-23 (Fla. 1st DCA 2008) (citing *Kay v. Bricker*, 485 So.2d 486, 487 (Fla. 3d DCA 1986)). Kurtz can hardly claim to have been damaged by a transaction which, although coming to pass only because of another's negligence, nevertheless proved profitable.

Kurtz likely has also incurred carrying costs associated with owning the property, such as property taxes and maintenance costs, that he would not have incurred had he declined to purchase the property. *Cf. Mitchell v. Metropolitan at Lake Eola, LLC*, 947 So.2d 1263, 1265 (Fla. 5th DCA 2007). There may also be incidental costs (e.g. closing costs and attorneys' fees) associated with purchasing and reselling the property that would have been avoided had he not bought Lot 12 in the first place.

Kurtz may also be barred from claiming his deposit as part of his damages. This would depend on exactly what occurs in the counterfactual scenario where Kurtz received appropriate advice – whether Kurtz would have properly rescinded his contract within the 10-day inspection period, entitling him to the return of his deposit; or instead would have breached the contract by

---

[2] Kurtz estimates that the market value of the property was approximately two million dollars less than the $7 million he paid for it; this difference is the "premium" Kurtz claims as an element of his damages.

refusing to close after the expiration of the inspection period, thus forfeiting the deposit. This in turn depends on the scope of Young's duty – i.e., whether a reasonable attorney in Young's position would necessarily have learned of the plat restrictions and notified Kurtz of them within the inspection period, or whether Young might have notified Kurtz of the restrictions only after the inspection period and yet adequately discharged his professional duty of care.

The parties also dispute whether Kurtz may recover the diminution of the property's value caused by the demolition of the two houses on Lots 1 and 12. Defendants argue that because they were not consulted in the decision to demolish the houses, they cannot be held liable for any damage flowing from the demolition. Yet, if Young breached his duty of care, he is liable to Kurtz for losses that could have been avoided but for his negligence. *See Sure Snap Corp. v. Baena*, 705 So.2d 46, 49 (Fla. 3d DCA 1997). Again, particularly in light of the circumstances surrounding the purchase of the two lots, a reasonable juror could conclude that Kurtz would not have demolished the houses had he known that he would not be able to build a single residence straddling both lots.

The possible existence of all of these potential elements of damage and the precise amount of each are questions to be resolved by the factfinder at trial. Their resolution at this stage would be both premature and unnecessary. To resolve this motion, it is sufficient to note that there are genuine issues of material fact regarding the elements of Kurtz's malpractice claim, including the amount of the loss Kurtz suffered from the alleged malpractice, that preclude the entry of summary judgment. Defendants' motion, to the extent it is based on Kurtz's inability to prove damages, must therefore be denied.

    2.    *Punitive Damages*

Counts II, IV and VI of the amended complaint assert claims for gross negligence against

Young, G. E. Young, P.A., and EAPD, and seek punitive damages. The purpose of a punitive damage award is not to further compensate the plaintiff, but to punish the defendant for wrongful conduct and to deter similar misconduct by it and others in the future. *See Owens-Corning Fiberglas Corp. v. Ballard*, 749 So.2d 483, 486 (Fla. 1999). To recover punitive damages for gross negligence, Kurtz must demonstrate that "the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Fla. Stat. § 768.72(2)(b); *Southstar Equity, LLC v. Lai Chau*, 998 So.2d 625, 632 (Fla. 2d DCA 2008).

Kurtz's claim for punitive damages centers on what he refers to as a "cover-up" of Young's initial alleged mistake in failing to advise Kurtz of the plat restrictions. The amended complaint alleges that when Kurtz sought to purchase Lots 2 and 3 in October 2007, Young prepared an addendum to the purchase contract that made Kurtz's performance conditional upon obtaining approval from the other Via Vizcaya landowners for Kurtz to encroach on the plat restrictions – both for Lots 2 and 3, and for Lots 1 and 12. *See* Am. Compl. ¶ 44. According to Kurtz, this act is evidence that Young was aware of his failure to adequately advise Kurtz earlier, and represents an attempt to retroactively correct the error. Kurtz argues that this is sufficient evidence to permit a jury to consider the imposition of punitive damages.

It is true that a reasonable juror could infer from the October 2007 addendum that Young was aware of an earlier mistake, and sought to remedy it. But this is evidence only that Young realized the error in October 2007; it does not show that Young knew of it in early 2006 when he was advising Kurtz in connection with the purchase of Lots 1 and 12. By October 2007, Kurtz had long since closed on those properties, and the transactions could not have been reversed or avoided.

Evidence of Young's knowledge at that time is irrelevant to the question of Young's alleged recklessness or indifference more than a year earlier.[3]

Punitive damage awards are limited to cases involving "truly culpable behavior." *Weinstein Design Group, Inc. v. Fielder*, 884 So.2d 990, 1001 (Fla. 4th DCA 2004) (quoting *Air Ambulance Professionals, Inc. v. Thin Air*, 809 So.2d 28, 30 (Fla. 4th DCA 2002)). Kurtz bears the burden to make a "reasonable showing by evidence in the record or proferred by the claimant which would provide a reasonable basis for recovery of such damages." Fla. Stat. § 768.72(1); *Leavins v. Crystal*, 3 So.3d 1270, 1272 (Fla. 1st DCA 2009); *Reinoso v. Fuentes*, 932 So.2d 536, 537 (Fla. 3d DCA 2006). That showing has not been made here. The court will therefore grant defendants' motion for summary judgment on those counts on which Kurtz seeks punitive damages.

### 3. *Breach of Fiduciary Duty*

Count IX of the amended complaint alleges a breach of fiduciary duty claim against all three defendants based on a somewhat different set of facts. Kurtz alleges that after demolishing the homes in Lots 1 and 12, he asked Young whether Young could represent him on a tax appeal from assessments imposed on the two lots by the Palm Beach County Tax Collector. According to the complaint, Young initially agreed, but then discovered that the representation was not possible because his law firm had represented Palm Beach County in various matters. Rather than inform Kurtz of the conflict, the complaint alleges that Young simply advised Kurtz that he had no basis for the appeal, and that Kurtz declined to file an appeal in reliance on that advice. Kurtz argues that as

---

[3] Indeed, it is not difficult to imagine how Young might have come to appreciate his mistake only after the conclusion of the Lot 1 and Lot 12 transactions. One perfectly plausible possibility is that Young became aware of Via Vizcaya's plat restrictions in the course of advising Kurtz with respect to the purchase of Lots 2 and 3, and then realized that these were applicable as well to Kurtz's earlier purchase of Lots 1 and 12.

11

a result, he forfeited potentially meritorious claims. *See* Am. Compl. ¶ 175-179.

The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; and (2) the breach of that duty such that it is the proximate cause of the plaintiff's damages. *See Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002); *Patten v. Winderman*, 965 So.2d 1222, 1224 (Fla. 4th DCA 2007).

It is clear that Kurtz cannot demonstrate any damages suffered from the failure to pursue an appeal. The breach alleged is that Young failed to take action that could have resulted in a lower property value assessment; thus, the damages claimed must be the property taxes that would have been saved with the lower assessment that would Kurtz claims would have resulted from an appeal. The situation is akin to a litigation malpractice claim in which a plaintiff alleges that he suffered damages from an attorney's mishandling of an underlying action. In such a case, the plaintiff is to some extent required to prove the merits of that underlying action, because he is generally required to show that he would have recovered damages in that action but for the attorney's negligence. *See Massey v. David*, 953 So.2d 599, 603 (Fla. 1st DCA 2007); *Olmsted v. Emmanuel*, 783 So.2d 1122, 1125 (Fla. 1st DCA 2001); *Tarleton v. Arnstein & Lehr*, 719 So.2d 325, 328 (Fla. 4th DCA 1998).

Similarly here, in order to establish his damages, Kurtz must show that he would have been successful in lowering his property value assessment had he pursued an appeal. There is simply no evidence in the record to support that claim. In fact, even the evidence submitted by Kurtz tends to that he could not have succeeded on appeal. Kurtz's expert property appraiser testified that the value of Lots 1 and 12 increased between 2005 and 2007. Because Kurtz has not provided any evidence to show that he suffered any damage from the failure to appeal the assessments, summary judgment must be granted in favor of defendants on Kurtz's breach of fiduciary duty claim.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment
Kurtz v. Young et al.
Case No. 08-80355-CIV-HURLEY/HOPKINS

## CONCLUSION

For the above reasons, the court will grant defendants' motion for summary judgment as to the claims for punitive damages and for breach of fiduciary duty, and otherwise deny the motion.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' motion for summary judgment [DE # 119] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Summary judgment is entered in favor of the defendants on Counts II, IV, VI and IX of the amended complaint.

   b. Defendants' motion for summary judgment is otherwise denied.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 26th day of May, 2009.

_____
Daniel T. K. Hurley
U.S. District Judge

*Copies provided to counsel of record*